The presence of Judge Lewis Pollack, a senior judge, senior to all of us, and not only his knowledge, his experience, wisdom, maybe wisdom and knowledge is the same, and all the other nice things. Not quite the same. Oh, shoot. That's right. It's not quite the same. You could elaborate on both of them. Who is, I didn't finish the sentence, in the Eastern District of Pennsylvania. This court couldn't do its work if we didn't have the assistance of visiting judges from other circuits, but really most other court of appeals judges who are senior, active judges are not allowed to move around. We have too much of our own to do. But senior judges in other courts of appeals and in our own district courts, and the district judge who sits with us the most and gives us the most help is Judge Pollack, who, if you don't know this, you should know, had been the dean of Yale Law School, had been the dean of Penn Law School, and they decided, oh well, no more academics for him, so they kicked him to the district court of the Eastern District of Pennsylvania, where he's been since 1978. Judge Hardiman and I are delighted to have him with us. Yesterday I said something about how I liked him, and he said, but it didn't mean that he liked me. And so, maybe he won't say that today, because it's on the record, as we pointed out. But you've inverted the conversation. I never invert a conversation. With all respect, we'll see what the record shows. We will hear counsel after that love fest in Brown v. Jennings. May I say a word? Do we get permission? Absolutely. Okay. I just want to say what a really great pleasure and privilege it is to work from time to time with the Court of Appeals. It's a particularly fine Court of Appeals, not just the best one in the Third Circuit, but around the country, and I've sat with others. Anyhow, sitting with Judge Sloviter and Judge Hardiman is indeed a great professional pleasure, and I should add that Judge Sloviter handles my public relations. Okay. Mr. Landau. And I tell you all, as you know, we read the briefs and the record before we come up here. Thank you, Your Honor. May it please the Court. My name is Christopher Landau, and I'm here this morning on behalf of the four appellants who are the four son defendants. I'd like to reserve five minutes for rebuttal. The key question here is whether a plaintiff can defeat removal of a multi-defendant class action by simply naming a debtor as a defendant in violation of the automatic stay. The answer to that question is no. The automatic stay, by its terms, provides that there can be no effective service of process on a debtor. Therefore, it's as if the debtor were not a party to the case at all and is not present in the case. It follows that a plaintiff can't defeat removal of an action by naming a debtor, and naming a debtor can't defeat removal of the action by a non-debtor who has been properly served. Are you suggesting that that's the purpose of naming Javik as a debtor? Not necessarily, Your Honor. The purpose is actually immaterial because the point is it's a legal nullity whether it was designed that way or whether it simply turned out that way unbeknownst to them. They certainly take the position that they didn't know, and that's really neither here nor there. The point is it's just a legal nullity. If they had named Javik before it filed for bankruptcy, it doesn't get deleted. It just gets stayed. Isn't that right? That's correct, Your Honor. You can serve Javik. Now, does it mean that once they declared bankruptcy, you can't serve them or you just can't proceed against them? You can't proceed against them if they have not been served. Well, if they haven't been served, you can't proceed anyway. Correct. Yeah, but I guess I never thought about the point you made at the very beginning in which you said you can't serve them. You may be right. I just never thought about it. No, it's actually, Your Honor, it's right there in the language of the automatic stay itself, Section 362. Okay. It says, I'll quote, the petition filed under a bankruptcy petition operates as a stay applicable to all entities, a stay of, and this is the operative language, the commencement or continuation, comma, including the issuance or employment of process, comma, of a judicial blah, blah, blah. Thank you. So that's really the key here, Your Honor, because, in other words, the district judge here was concerned, and understandably so, about some violation of the automatic stay. She thought, and again, it's understandable, the idea is once there's a stay, everything freezes. You don't want the debtor to have to spend any money in defending an action. She thought the whole thing should just. Stay near the mic. I apologize, Your Honor. We get it on tape and we listen. I feel like I'm getting feedback in the mic, but I don't want to have that fingernails on a chalkboard sound, though. Okay. Go ahead. The, what the district. Mike, can you, can it pick it up if it's down that low? Huh? What'd you say? Oh, okay. Thank you, Your Honor. The point is, the, when you have been, when the debtor is covered by the automatic stay, at that point, it's as if the debtor's just not a party. You don't want the debtor spending money. Could the son defendants have appealed? I mean, the big point on the other side is that they should have appealed the first order, and they didn't. And are you telling us there was nothing to appeal? Well, Your Honor, yes. In other words, the, frankly, I think that was probably correctly decided. I mean, certainly the law is, this court has not decided this issue. The Sixth Circuit has decided this issue, and Bankruptcy Court in New York, that even a, when a defendant who is covered by the automatic stay tries to remove, that is ineffective. And in a sense, you can understand why that would be so, because the service of process has been ineffective, and you don't want the debtor incurring money on that score. So, frankly, I don't see how we would have had standing. What is unusual here, CAFA creates a regime where you don't need everybody to join in a removal. Usually you don't have this issue, because in the typical non-CAFA context, if everybody who's been served has to join the removal petition, then everybody is there together. And in that situation, you can understand when there's a remand order, everybody is actually on those papers. Here, of course, under CAFA, any one defendant can remove without the consent of the other defendants. So it gives rise to this issue of what happens when one person removes. Certainly, we had no problem, it would have been very, it would be very odd, Your Honor, to create a rule that we, who were not named, who did not file the removal, would have had to take an appeal of the district court's decision saying that the debtor couldn't remove, when we actually thought that decision was perfectly fine. We just created a very anomalous situation of forcing us to take appeals of decisions that we think were correctly decided. And, again, the key here, Your Honor, is why would we have done that when we were still within our initial 30-day period for removing ourselves? It frankly seemed like a no-brainer for us to say, you know, why would we try to get involved in this complicated, in an appeal where we really had no business and where we frankly thought that the thing was correctly decided, when we could just remove ourselves? Excuse me, Mr. Lambert, did you reserve time for rebuttal? I did, I'm sorry, did I? You probably did with him. Okay. Yes. Yeah, okay, thank you. So, again, Your Honor, I think the answer to your question specifically is no, we could not have appealed. And, again, the point is we were still with… In a multi-defendant case under CAFA, let's say nobody's bankrupt, and you don't have to get the permission of all the other defendants to remove. So defendant number one moves and can stop defendant number two or three or four from doing anything? Well, Your Honor, again, one critical point is once defendant number one has removed, the action, the entire action is removed. It doesn't just remove the claims against defendant number one. So defendant numbers two, three, or four really have nothing to do on removal because the case has been removed. The entire action has been removed, even though they didn't join in the removal. So they're not precluded from doing anything. And I suppose, Your Honor, if they wanted to, they could join the removal and make themselves parties to that. If the court removes and can anybody… What can be the position with respect to remand and appeal from that? Suppose a defendant doesn't want to be removed. Can that defendant who hadn't filed the removal appeal? Trying to just figure out the practicalities of this under CAFA. Sure. CAFA creates a lot of… I mean, the two people on both sides of me have been district judges. Well, one is and one has been, and I never have been. Right. I think the key point I'd like to make, Your Honor, is that it would… And I think a district court would really understand this point, that it would be very odd, The regime that they're proposing, Your Honor, would be that we, as a non-removing defendant… Again, CAFA creates this anomalous regime where one defendant can remove. We're the defendant that didn't remove, although our claims are removed. The remand takes place on the basis that is unique to the removing party. Because that party is a debtor, that party couldn't remove. Their rule, Your Honor, would basically force us to be in the position of appealing a district court remand decision that we think is entirely correct. In other words, we had no issue with the district court's decision to remand the case on the ground that the Jevick bankrupt defendants had no business, had no right to remove it. But certainly, it would be very strange, I think, from a district court's perspective, to be appealed and possibly reversed on a ground that the district court was never asked to consider and that the district court may have been entirely correct on. The thing that's a little bit anomalous about that, it seems to me, though, is when you say you don't object to the remand vis-a-vis the debtor, when we talk about remands, the whole case gets airlifted. It literally, all the papers in the docket get taken from the federal court and shipped, in Pittsburgh anyway, right down Grant Street to the state court. So the notion that it could be remanded vis-a-vis one party but not the other is sort of a logical impossibility. It is not remanded vis-a-vis. The whole case is remanded. I think, again, the premise of their argument is that there's only one bite at a removal apple. That has never been the law in the non-CAFA context, and certainly nothing in the CAFA context made it harder to remove. Excuse me. When this case was removed the first time and then there was a motion for remand, did you participate in the briefing, the argument of that? No, Your Honor, and you raise a very good point. It was remanded sua sponte within days. It was removed, I believe, on June 27th, and there was no briefing or argument on that. It was just remanded, and we removed, in fact, the next day. So their notion that we are somehow playing games with the appeal system doesn't pass muster because we removed the very next day, within one day of the initial remand. We would have still been within time to file the appeal had we thought that was prudent or necessary. But instead of fighting a battle that wasn't our battle, one point that's critical is that there's a 30-day removal window. That's the original 1446 window. CAFA doesn't serve that window. We were still within our initial 30-day window to remove. So, again, why would we have even had to deal with these complexities of, gee, should we appeal? Why fight an appeal if you can just remove? Correct. Correct. I think the trickier question, frankly, in terms of your setting the CAFA rules, might arise for somebody when it's remanded after their 30-day window for removal has come and gone. But, of course, that's not this case. Then you might have a tolling question. This might be analogous to American pipe tolling in the class action context where somebody in that situation could say, why would I have wanted to remove if the case was already removed? But, again, that's not here, Your Honor, because, again, it's as if the Jevick defendants were not a party to the case and we were perfectly entitled to remove. We were within our 30-day window incontestably. And so the original remand had no deleterious effect on our ability to remove. Mr. Lando, let me ask a question that I think is probably a pointless one. There are no such thing, Your Honor. There are very few pointed questions I ask. As distinct from filing the next day your petition for removal after the sua sponte remand, could you have asked the district court to modify its remand order or vacate that aspect that dealt with you? I don't know that that would have changed anything that we're considering. I'm just trying to dope out what the process is over here. It's an interesting question, Your Honor, whether we could have done that. Certainly I don't think we could have moved for reconsideration because, in a sense, the court was correct. I mean, whether we could have kind of tried to intervene in the initial one is an interesting issue. Again, because of the fact that we were still within our 30-day window, we weren't forced to cross that hard bridge here, and it was much easier to do it this way. But those are the kinds of questions, as a practical matter, that will arise in these. Either you have a regime of tolling where a person's 30-day window gets kept open by dependency of the initial one, or it seems to me, in fairness, you have to have a regime where somebody could come in and do that. Frankly, I think people should. This case doesn't really present a great vehicle for giving that broad guidance, again, because we're in the 30-day window. But people are going to want to know the answer to that. Just litigators, as a practical matter, who are in a multi-defendant class action where one person removes, they're going to want to know, gee, should I now participate in that? Should I appeal that? So I think that this case raises some very interesting issues. I think this is an easy case, just given where we are on the side of the 30-day line. Let me ask you a question somewhat different. There is currently an adversary proceeding going on on the same matter. Precisely. If we were to agree with you, and this would have to go back to the district court, would there not be a process in which this matter could be stayed, pending, or consolidated, or in some way effected so you don't have two duplicative actions going on?  We had made a motion to transfer this case. That is what we wanted to do. We wanted to get this case to federal court and then transfer it to the bankruptcy. Because it doesn't make sense, as Your Honor recognizes, to have two dueling class actions. In fact, one thing that happened recently that's not reflected in the briefs is that the class was certified last month in the Delaware bankruptcy court action. So that class action is moving ahead. I don't know the mechanism for the inter- It's a 1404 transfer, I would think, for interest and convenience of justice. Because you wouldn't have a 1407 yet at this point. Well, okay. And again, if you look at the docket here- But you would have no objection to some kind of consolidation. Not only no objection, we would affirmatively welcome that. We actually filed a motion, you can see in the docket sheet below, to do just that. Okay, thank you. Do you have any more questions? No. Are you okay? Thank you, Your Honor. Okay, then we'll hear from your friend along the other side of the aisle. Mr. O'Brien. Good morning, Your Honor. We're making some law here under CAFA. There's not a lot, as we well know. A couple of things. Notwithstanding the absence of a lot of law, there are some facts here that- But it's important here to look at the factual scenario as it occurred. On May 18th, some 10 months ago, a big company shut down. 1,200 people went out. With 24 hours notice, they lost their jobs. Economic catastrophe in Burlington County. Thereafter, I got involved nine days later, not knowing. And I did file the complaint in state court in Burlington County, under state law only. Because as Judge Sloviter, you know, under federal law, it's pretty hard if you have a failing employer. You were involved in the APA decision several months ago. It's pretty hard to get a cause of action under federal law, warrant act-wise, with a failing employer. There's a new law in New Jersey that just passed in December of 2007. It doesn't have any defenses, for the most part, from an employer, for an employer in a failing business. The Delaware action does charge the Federal Warrant Act as well as the- No. My action was filed in state court. The one in bankruptcy does- No, the one in bankruptcy- Yes, it does. It does have a warrant. Yeah, they filed it initially in Federal Warrant Act as an adversary proceeding in bankruptcy, and then amended it and included the state act. But that wouldn't- would it adversely affect the possibility of some consolidation? I don't know. I don't know. There's another proceeding going on. You asked the question, why isn't this case in federal bankruptcy? No, I didn't ask that. Well, I thought you had suggested that maybe there's an issue as to why it's not in bankruptcy court. Why Sun didn't try to get itself in bankruptcy court. And I don't know the answer to that, because I don't think they've tried to get the federal judge, Judge Shanahan, or the bankruptcy judge, Judge Shanahan, to move this case down in front of him. And, Judge Pollack, you asked the question, and I think it was a pretty good one, relative to simply going back to the district court judge, Judge Baum, and simply saying, you can't remand something you have no control over, almost. It's like a metaphysically impossible thing to do. And that wasn't done. So what we have here is a factual scenario wherein I filed a complaint. It was, of course, later dismissed by the Superior Court against Dejevic defendants. It's still up there in Burlington County Superior Court. But you start with a proposition here. You've got a New Jersey gang of defendants or a group of defendants who are New Jersey residents. You've got a cause of action in New Jersey. You've got, for the most part, a vast number of New Jersey plaintiffs, overwhelmingly so. And you've got the acts that were complained about all occurring in New Jersey. Now, that kind of scenario seems to me kind of important under CAFA. So if, in fact, we get into a position of remanding this case or sending this case back to district court and telling them to grant the removal, what you've got essentially is a case that has all the indicia of a non-CAFA case. But I guess the bottom line here is those are all policy arguments against the wisdom of CAFA. I think it's clear that you want to be in New Jersey court, and maybe you have some good policy reasons why you should be in New Jersey court. But I think you need to persuade us why you have a right to be in New Jersey court or conversely why your adversary doesn't have a right to be in federal court. Well, the short answer here is what's a federal district court judge to do? Judge Bum got this case on a removal petition from Jevick. That's the uniqueness of this case. And perhaps the suggestion is that she shouldn't have decided it this way and simply said, I can't entertain a removal petition, Mr. Jevick, simply because you're a non-entity, a metaphysical impossibility, and I'm not supposed to do anything to you. But the fact of the matter is that Jevick did file the application for removal, and that's the flaw with the argument here that's been raised by the employer. Judge Bum. Didn't Sun remove the action? The second time, yeah, after the first removal. But the question becomes, how many shots do you get at removal? There's cases that we have cited in our briefs saying you get one shot at removal. Judge Bum said, we're not going to have a bunch of revolving doors here. How about the other defendants? Maybe they can come in if I deny it against Sun. Are you saying that the cases establish the principle that if you have multiple defendants, removal can happen only once? Yes, under this statute. The unusual nature of CAFA is it doesn't have to be all defendants agreeing to go in. But I think it's pretty clear that once you remove, and it's important here to think, what was removed? Jevick was attempting to remove the entire case, and what you're going to get here is piecemeal because now we have Sun coming back trying to remove a second time against themselves. Not the entire case, but against themselves. Is it possible to conceive of this as a situation in which the judges sua sponte remand? First decision or second? Pardon? First or second? The first remand or the second? Remand. Essentially, it was a statement. There never was a removal because Jevick, as you say, metaphysically doesn't exist. And therefore, what we have here called the second removal is really a first removal. But she did in response to Jevick's request consider it on the merits. And I guess the question is, if you decide that the second removal is okay, essentially I think you're deviating from a rule that says you get one shot at removal. And I think that's the problem here. If one defendant improperly removes, why does that pollute the opportunity for all the other defendants? Because I don't think you can have a sequence of different defendants coming forward and simply saying, well, I get my crack now. That's not the way the removal statutes work. Well, why would they want to if, in fact, the whole thing has been removed and another defendant also wants to remove? It's been removed. Why would you have the syrianum removal? Because the first time Judge Bum said no. Yeah, but let's assume she was. Put aside that. Take the ordinary case in which you said what we would have, I think you said, was a series of different defendants removing. But if you don't have the first removal invalid because it was against a non, it couldn't happen, would you ever really practically have another situation with multiple removals? Why would they do that? If other defendants wanted the case removed also, you don't remove as to a defendant. You remove the whole case. So why would you ever have extra removals except in the case where there was a remand like now? I mean, isn't this a sort of sui generis situation? It is. And intellectually, it's interesting. But you also have here some important policy considerations under CAFA. You've got a situation here where you have a huge deviation from traditional removal law where we have individual defendants removing. As you know well, when you remove, everybody's got to remove. Under CAFA, including the debtor? I don't know. I mean, isn't that the real policy concern? It seems to me if we adopt the rule you're advocating, a party could always defeat removal by naming a bankrupt entity as one of the defendants. Well, you're going to have to look at whether there was a fraudulent joint or not. Why should intent be the barometer here? Why does the Council argue that that's immaterial? Why is that wrong? Because it's wrong because you're ignoring the Javik bankruptcy removal. Notwithstanding Javik was in bankruptcy, its attempt to remove. There are two wrongs, right? Javik should never have been sued. You can't sue a party in bankruptcy. Agreed. And Javik should not have removed the case because, as you point out, Javik was not in existence under the law. But the question becomes you're going to find a lot more times when the bankruptcies stay, which I did. I violated the bankruptcy stay not knowing at the time. It was legal malpractice not to name Javik, knowing what I know at the time when I filed the lawsuit. Understandably, if you don't name the employer, then what kind of lawyer are you, you know? But by the same token, we get to the point that Judge Bum gets this in front of her. And I think you have to take a hard look at what she talked about the second time. I mean, it's not the most extensive kind of order. Not only is it not so extensive, the other side didn't have an opportunity to be heard on the matter. Well, Judge Pollack suggested that if they didn't like the disposition, they could have went back and said to her, what are you doing? It's a non-entity. It's metaphysically non-existent. You know, but instead, second crack at the apple. No, not Sun. I mean, that's not the problem. I mean, she didn't appear to distinguish the fact, or perhaps it wasn't meaningful to her that the party that removed the second time was not Jevik, but, in fact, Sun, which is a living, breathing corporate entity and did apparently have the right to remove the case. At least initially, before Jevik. Well, I guess that's my question. It sounds like your argument is that this mistake that was made by Jevik somehow forecloses Sun's opportunity to remove. And there's just no case law on that. There's nothing. But by the same token, what's the district court judge the second time up? And I disagree with you, Judge Hardiman. I think Judge Baum knew Sun was a new guy at the block and was one of the actors here. And I guess the question is that the bottom line here was when you make this decision and you decide, if you decide that Sun has the ability to go in for a second, file a second petition because of the nature of the first removal petition, essentially you're giving him a second crack at the apple. And I don't think removal law says you get a second crack at the apple. If you look at our cases. Mr. O'Brien, suppose we change this narrative a little. Suppose the initial removal was by Sun. Then you moved to remand. Is Judge Baum to say to herself, well, I have here a case removed to me that shouldn't be here because Jevik is not an entity that can be sued? Should she on that basis grant remand or just send Jevik back to you in the superior court? Or what? The answer is I think that defendants love CAFA because only one of them has to do it. If she had a Sun petition to remove the first time in answer to your query, I think she doesn't have to inquire into the status of Jevik, bankrupt or otherwise. She's got a legitimate bona fide defendant in front of her trying to remove on a CAFA claim. And she should have granted it. She should have granted it. So the linchpin, I think you're being quite clear then. The linchpin to your argument is not that Sun didn't have a right to remove in the first instance. It's that Jevik having made the mistake that foreclosed Sun's opportunity to remove. To answer your question with your comment before, two mistakes, mine and theirs. And they need to pay for theirs, but you don't need to pay for yours. Well, I got paid already. I got it. It was dismissed by the state superior court. So here we are. So justice has already happened, at least in my case. Finally, I sit down. I have some time left. I'll just say this to you, Your Honors, if I may. This case concerns, I know it seems like an arcane point or nuance under removal statutes. And I'm concerned about what it portends because this case has been around now for eight months. I ran into the superior court trying to get some relief under a state law, state actors and state plaintiffs and state conduct. And here we are, eight months later, and we're trying to figure out a nuance as to whether we want to remove. And I know it's policy. Judge Hardiman, you say, well, you're arguing about policy, arguing against CAFA. No, I'm not. Because if you look at our brief, we briefed this CAFA issue as to whether the judge maybe should have also looked at whether CAFA jurisdiction permitted or whether this was a local exemption under CAFA. I don't think a local exemption covers this. But why isn't the case that's in the adversary proceeding now adequately protective of your clients? I want a state court judge to decide on a new state law. It needs to be heard. Well, is that state law any different from the Warren law, the federal Warren law? Oh, big difference. There are no defenses under the state act. Additionally, the state act doesn't give 60 days pay. The state law provides for one week of pay for each year of service. Additionally, there's a huge definition in the state law of what an employer is. But doesn't the adversary action also cover the state Warren law? It does. You're not the lawyer in the adversary action. They may not do as good a job as you would do, as we can see here. But aren't the employees' rights being adequately protected? It's going to go before a neutral decision maker or a jury. Yeah, the bankruptcy judge. But what I did is I filed 200 proofs of claim. We represent 200 people here. I filed 200 proofs of claim in bankruptcy against Jevick. I don't want a state court or a federal bankruptcy judge deciding a matter of state law. Go ahead. Federal district judges and bankruptcy judges do that every day. That's the Holieri doctrine. I know they do. I know. I can only speak for myself. I mean, Judge Pollack can speak for himself, but I can assure you that when I had a case involving state law issues, which happened quite frequently, we did our level best to get it right under state law, regardless of what we thought of the propriety of the state law. The real remedy for people like myself and former department is for you to urge on your representatives in Congress to get rid of these federal courts. I mean, not the Supreme Court. The inferior courts. We're in revolutionary times. Don't be surprised to see CAFA legislation overturned with the new administration. Thanks for your time. Thank you. I don't know if I have any time left over. We don't take rebuttal time. Unlike the Supreme Court of the United States, if you talk over your initial time, we don't take it out of the rebuttal time. We're very generous. I will still be very brief and not abuse your generosity, Your Honor. There's three quick points I just would like to make. First, I think that argument shows that the premise of their position is that there is this alleged one bite at the apple on removal. That is simply not true. The Supreme Court in the Fritzlin case has made that clear. This court in the diet drugs and the dough cases has specifically made that clear. They based that language on this First Circuit case called Providencia from 1969, which doesn't stand for that proposition. The Providencia case says that once a district court remands, the district court can't pull it back. In other words, and that's what happened in that case. In other words, that is one thing to say, once you remand, once you send that certified letter and it's gone, it is gone. And that is a very different thing than saying that there can be no subsequent removal. Excuse me. So the premise of their argument that there's this alleged one bite at the apple is simply not correct as a matter of law. Second quick point is they said that our regime has parts of cases being removed. Again, that is not true. When we remove the case, just as when Jevic removed the case, the entire case is removed, including the claims against the Jevic entities. Those claims are, you know, the Jevic entities basically, the claims against the Jevic entities are going to lie dormant, whether the case is in state court or in federal court. They're safe. It doesn't matter. But they don't preclude. They're not like a lead balloon. Unless, of course, the bankruptcy court gives relief from the automatic stay. Absolutely. Absolutely. That's the asterisk that goes to everything that I'm saying. You're absolutely right. But, of course, that has not happened here. But I think this kind of goes to some questions that Judge Pollack was raising with opposing counsel about what, you know, these Jevic claims, what is going on with them. Again, the Jevic claims are not a lead balloon that holds the whole case back. The Jevic claim, the claims against Jevic are exactly the same as claims against an unserved defendant, who even in the non-TAPA context, when all plaintiffs, excuse me, when all defendants have to consent to removal, that rule has never been applied to unserved defendants. So, basically, again, I think the easiest way to think about this is that Jevic defendants covered by the automatic stay are just like unserved defendants. They don't have any impact on the removal rights of co-defendants. If it applied to unserved defendants, plaintiffs could always defeat removal just by choosing not to serve somebody. Exactly right, Your Honor. And the same exact point arises here, I think, as you had pointed out with opposing counsel. The vice with the regime that Judge Baum came up with is that it would allow plaintiffs to defeat removal for everybody by naming a bankrupt party in violation of the automatic stay. That's why it would be so revolutionary to accept their argument. I think counsel is very forthright. Counsel would like to litigate this case in state court in New Jersey. What's your answer to him? He says, look, these are New Jersey people who are now out of jobs, adding to all the people in the country who are out of jobs. And we want a New Jersey state judge to decide this case. And anyway, we get more rights under the New Jersey law, which is new, than we get under the federal law. How do you answer that? My point is the same, I think, that Your Honor made, which is to point out that there is a New Jersey Act claim pending in the adversary proceeding in Delaware. But he wants a New Jersey judge to decide the New Jersey claim. Well, then he should, I think this is Judge Pollack's point, he should say to Congress, please get rid of removal jurisdiction. I think that a state court should decide a state law. Well, I thought Judge Pollack said get rid of the state. Or get rid of federal courts. He can pick his, you know, these are different times. Just leave the removal statute, just not have any courts. So, again, I think that that's, I think that's the answer, that federal courts, you know, there are certain removal rights, and state causes of action get litigated in federal court. Plaintiffs often want to stay in state court. That's understandable. But that's why the removal thing. The other point I just wanted to make is he raised concerns about an ongoing series of removals that could be disruptive. The 30-day window that CAFA keeps from Section 1446 will prevent any such problems. Because, again, you only have 30 days to remove from the time in which a pleading puts you on notice of a removable condition. You know, lawyers are very fast. A lot of lawyers can move in that 30-day period. A lot of? Lawyers can move. You know, the 30 days doesn't preclude a series of actions. No, but I guess my only point, Your Honor, was to say that there is no concern about things getting delayed indefinitely, because at some point it's going to be people have no basis for removing a case months after it had become removable, because you're always going to have the 30-day window. You can't play games. You can't play games. And that's a jurisdictional requirement. Yes. This is the safety valve that precludes a parade of horribles about things going on indefinitely. Am I wrong that Sun is a corporation affiliated with JEVIC? No, you're not wrong, Your Honor. That is true. Sun is the parent corporation? Yes. Sun has an ownership interest in JEVIC. Is it 100 percent owned? I believe that's true. Majority, let's say. Yes. At least, yes, Your Honor. So it's not such a different corporation? Yes. It is clearly a legally distinct entity. Okay. Thank you. There's no further questions? Thank you. I want to ask one question. Oh, sure. This is an inappropriate question because it really inquires about law strategy. But am I right that the real reason that you wanted to remove was the thought that you could get rid of Mr. O'Brien as an adversary? But you know, he'll come along with the case. And he's going to be a tough adversary, whatever court you're in. Well, I am sure that is true. But, Your Honor, again, the point is there are many reasons people want to remove. I see Mr. O'Brien is getting a big chuckle, and Your Honor is, too. Well, he's such a good lawyer. He's impressed us. He's such a good lawyer. You know, all I can say is, you know, wouldn't you want to if you were in our shoes? Absolutely. Thank you, Your Honor. Thank you. We'll take the matter under advisement.